# STANLEY A. FOUTZ ET. AL. *vs.* GEORGE W. MILLER ET AL.

*Liability of Directors of Corporation for Mismanagement.*

The directors of a corporation are not personally liable for the consequences of their unwise management of its business, but are liable only for gross negligence or fraud.

A bill by the receivers of an insolvent savings institution against the directors alleged that its funds were wasted and lost on account of the negligence and extravagance of the defendants, and charged that they were personally liable for the loss. *Held,* that the evidence shows that the defendants acted in good faith, and had loaned the institution more money than they had received from it in salaries; that all the money paid to the institution was fully accounted for; that the losses

were caused by honest mistakes of judgment, and that consequently the defendants are not liable therefor.

*Decided February 4th, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*E. Allan Sauerwein, Jr.,* (with whom was *John J. Hurst* on the brief), for the appellants.

*Howard Bryant,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The appellants on this record are the receivers of the Fraternal Savings Association of Baltimore City, a corporation organized under the laws of Maryland. Its objects were "to furnish a safe and profitable system for investing money, in either small or large sums, in a manner which assists and encourages savings, such savings to be readily converted into cash, if desired, and increased profits awarded those who persist in saving through a term of years; to promote industry and thrift by aiding those wishing to acquire a home or place of business to do so on an easy monthly payment plan, costing but little, if any more, than the rental of the same property." These objects were to be obtained by having a home office as a distributing point, and branches or advisory boards in other towns and States. Each local branch having supervision of the association's affairs for the town, and all operating under one charter and plan.

The association began business on October 19th, 1899, and was placed in the hands of the appellants, as a insolvent corporation, on the 25th of July, 1901, so that the period of its active work was about twenty months. The defendants in

this case are directors of the company, and the object of the suit is to hold them personally liable for losses sustained by the association and its stockholders. Negligence of the directors is the ground upon which personal liability is attempted to be fastened upon them.

It is charged that the management of the affairs of the association by the directors was "marked by wilful disregard of the interests intrusted to their care, and by reckless and culpable extravagance and negligence, whereby the said board of directors misapplied, wasted and squandered the funds and assets of said association;" that investments of the funds of the association were lost because they were to a great extent made "negligently and imprudently by said board upon inadequate security;" that the directors suffered the funds and property of the association "to be lost and wasted by gross negligence and inattention to the duties of their trust;" that they "acted negligently, recklessly, wastefully and culpably in the management of the affairs of said corporation, whereby it sustained the almost complete loss of its funds and property, and was rendered insolvent." George W. Miller and Elmer C. Wachter were the only defendants who answered the bill. Their answers denied all the charges of negligence, recklessness and extravagance, etc., charged against them, and averred that they had acted in good faith and did all they could for the best interest of the association. Testimony was taken by the appellants, and the bill, after argument, was dismissed by the lower Court.

There can be no doubt that the defendants as directors of the insolvent association would be personally liable in this suit for losses sustained, if the allegations of gross or culpable negligence charged in the bill are proved. This Court has defined the duty of directors, and has stated the circumstances under which they are personally liable for losses sustained by the corporation in consequence of their negligence. It may be said that the rules to be applied to this class of suits have been definitely settled in this State. *Booth* v. *Robinson,* 55 Md. 420; *Reus Loan Company* v. *Conrad,* 101

Md. 224; *Emerson* v. *Gaither,* 103 Md. 564; *Fisher* v. *Parr,* 92 Md. 245; *Murphy* v. *Penniman,* 105 Md. 452; *Thomas* v. *Penniman,* 105 Md. 475.

In *Booth* v. *Robinson, supra,* the Court adopted the doctrine announced in *Overrend* v. *Gibb,* 5 H. L. 480, that "facts which may show imprudence in the exercise of powers clearly conferred upon directors will not subject them to personal responsibility; but if the imprudence be so great and manifest as to amount to *crassa negligentia,* and consequently to a breach of trust, personal responsibility will be incurred. Indeed all the cases agree that directors are not liable for the consequences of unwise or indiscreet management, if their conduct is entirely due to mere default, or mistake of judgment, but the *onus* of proof of fraud, combination, or gross negligence to render the directors personally liable is upon the party making the charge; and the proof must be clear and manifest."

The real contention between the parties is as to the effect of the eidvence. Does it show that Miller and Wachter were guilty of such gross negligence as to render them personally liable for the losses sustained by the association? We have carefully read and considered the evidence, and our conclusion is that it does not support the charges of negligence contained in the bill. There is no fraud charged, and it is not claimed that there was any misappropriation of any of the funds of the association. The evidence shows that Miller and Wachter, against whom the suit is really directed, were acting in entirely good faith, and were pursuing a course which they believed would result in the ultimate success of the association. The directors had subscribed for and paid in about six thousand dollars for stock. Miller and Wachter seemed never to have doubted that the association would be successful, and only a short while before it went into the hands of receivers, they loaned it substantial sums, which have never been repaid. They paid in more money than they received in salary. The only evidence in the case tending to show bad faith are certain false statements contained in let-

ters and printed matter sent out by the secretary apparently for the purpose of securing further stock subscription; but neither Miller nor Wachter appear to have known of these statements, nor does it appear that these representations in any way contributed to the losses sought to be recovered. Every dollar of the money paid.in or stock subscriptions and otherwise has been accounted for, the books were correctly kept, and showed to whom and for what purposes the money was paid.

This association was very ambitious in its projects. It was proposed to make it an interstate association; to establish local branches in different States, and it did establish local branches, and did transact business in several States. It was authorized to do a building and loan association business; to loan money on chattels, notes and other security; to engage in the trust, deposit and storage business; to receive money on special deposit, and to issue trust, deposit and storage stock. These things seemed very attractive to the gentlemen interested in the company. They believed it would be favorably received by the public in the large field in which it was proposed to operate, and that they would have no difficulty in establishing and extending it. Its brief career furnishes another example of disappointed expectations. The thing went to pieces, and the stockholders lost their money. This has happened many times to other enterprises which appeared most attractive, and full of promises of handsome returns on the money invested. Such a result is usually followed by charges of mismanagement, recklessness and negligence, and often by suits by the unfortunate stockholder to recover his money.

The record shows that the money was really lost in the effort made by the directors to establish the business of the company. The policy adopted for the development of the association, in the light of subsequent events, may be said to have been unwise; but the plan or method that should be adopted and pursued was a matter to be determined by the

directors, and it does not follow that merely because the company failed that they can be held personally responsible.

Mr. Miller, the president, appears to have been an honest and honorable man, but inexperienced in the business in which the association was engaged, and this want of experience, and mistake in judgment as to the proper course to be pursued were really the causes of the failure of the company, although it is entirely problematical whether such an institution could have succeeded under the most efficient management.

When the acts of the appellees are considered in the light of the situation and conditions in which they were placed, while it may be said they were unwise, indiscreet and inefficient in the management of the association, and were guilty of some negligence, we do not find that they were guilty of *such gross or culpable negligence,* which must clearly be shown, before they can be held to be personally liable.

The order appealed from will, therefore, be affirmed.

*Order affirmed with costs.*